UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEN NAPIER, | ) |
| :-- | :-- |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-cv-535-PPS-MGG |
| LOUIS DREYFUS COMPANY LDAI HOLDINGS, LLC, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This is a slip and fall case. Defendant Louis Dreyfus Company LDAI Holdings has moved for summary judgment. [DE 26.] It does so on a narrow basis. Its sole argument is that plaintiff Ken Napier has failed to provide any evidence that Louis Dreyfus had actual or constructive knowledge of the hazardous conditions which allegedly caused Napier to slip and fall while on Louis Dreyfus's property. But in opposition, Napier has offered just enough evidence to create a triable issue of material fact as to whether Louis Dreyfus had notice of the hazardous condition (biodeisel fuel on the ground). Accordingly, I will deny the motion.

**Background**

At the time of the accident, Napier was working as truck driver, transporting biodeisel for a company called SJA Transportation. He would pick up his truck in the morning, drive to Louis Dreyfus's property (a biodeisel terminal or storage facility it seems), fill his tanker, and then deliver the biodeisel to filling stations near the

Ohio/Indiana border. [DE 40-1 (Deposition of K. Napier) at 14:11-18:4.] He did this approximately three times a day, five days a week, over the course of several months in 2015. [*Id.*]

On the morning of November 9, 2015, Napier was engaged in his regular work routine when he slipped and fell while on Louis Dreyfus's property. According to Napier, he did not see biodiesel on the ground when he exited his truck, but as he walked towards the back of the tanker, he stepped on the liquid and slipped. [*Id.* at 36:5-37:14.] He fell between the curb and his truck and landed on his backside, hitting his head against the cub. [*Id.* at 39:24-40:8.] Napier further testified at his deposition that while he personally did not see the spill prior to his fall, he was told by an employee of Louis Dreyfus at the "guard shack" near the loading area that there had been a spill the day before and that it had not been cleaned up. [*Id.* at 50:1-51:6.] As a result of the fall, Napier suffered personal injuries and has claimed other damages, the extent of which are not relevant for purposes of the present motion.[1]

---

[1] During a telephone status conference with the court on August 20, 2018, I asked counsel about the extent of Napier's injuries. Because the extent of those injuries was not clear from the pleadings or adequately explained during the telephone conference, I asked the parties to submit supplemental briefing on the amount in controversy so that I could be sure I had jurisdiction pursuant to 28 U.S.C. § 1332. The parties subsequently did [DE 41 and 42] and have made clear that plaintiff's alleged medical bills, worker's compensation claim, lost earnings, and damages for pain and suffering are capable of exceeding $75,000. Accordingly, I am satisfied that I have jurisdiction to hear and decide this case. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510 (7th Cir. 2006); *McMillan v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009).

**Discussion**

I.  **Governing Law**

Federal Rule of Civil Procedure 56 governs a motion for summary judgment. Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party can either point to undisputed facts supported by evidence or point to an absence of evidence as to some element of the other party's claim or affirmative defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Louis Dreyfus has moved under the latter approach.

When deciding a motion for summary judgment, I must review the evidence presented and construe all facts and draw all inferences from those facts "in the light most favorable to the non-moving party." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). In order for the non-moving party to prevail, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

A slip and fall case is a type of negligence suit. "The tort of negligence has three elements: (1) a duty owned by the defendant to the plaintiff; (2) a breach of that duty;

3

and (3) injury to the plaintiff resulting from the defendant's breach." *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 827, 878 (Ind. Ct. App. 2011). Under Indiana law, the scope of the duty owed in a premises liability case is dictated by the status of the individual who is on the property. There are three status groups: trespassers, licensees, and invitees. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991). Here, the parties agree that because Napier was on Louis Dreyfus's land in connection with business and was duly authorized to be there, he has the status of an invitee.

"[A] landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell*, 569 at 639 (citing *Hammond v. Allegretti*, 311 N.E. 821 (Ind. 1974)). The duty to an invitee is breached by a condition on the land when the landowner "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Id.* at 640 (quoting Restatement (Second) of Torts § 343 (1965)).

What this all means is that, when considering a summary judgment motion in a premises liability case, the defendant need not present evidence affirmatively showing a lack of notice of the dangerous condition. Instead, the burden is on the plaintiff to present evidence that shows that the defendant was aware of the dangerous condition. And as noted above, evidence of either actual notice or constructive notice will do.

4

Failure by the plaintiff to point to evidence of the property owner's actual or constructive knowledge of an unreasonable dangerous condition will result in a grant of summary judgment in favor of the property owner. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018).

## II.  Evidence of Louis Dreyfus's Constructive or Actual Knowledge

Having distilled the legal framework governing the claim, it's time to assess the facts. The key piece of evidence is Napier's deposition testimony. Napier testified that on the morning of the accident, an employee of Louis Dreyfus (whose name Napier did not recall) told him that there had been a biodiesel spill the day before. [DE 40-1 at 48:18-19.] Thus, according to Napier, the spill was present for several hours and was known by at least one of Louis Dreyfus's employees at the time Napier entered the property. [*Id.* at 50:10-24.] Napier says that this statement creates a disputed issue of material fact as to whether or not Louis Dreyfus had actual or constructive knowledge about the spill.

Louis Dreyfus did not file a reply brief, and has not objected to the admissibility of this testimony. Nonetheless, I think it prudent to assess the admissibility of the proffered evidence if I'm going to base my ruling on it. In a roundabout way, Napier tells me that the statement by the unknown employee is not hearsay because it was made during the scope of their employment. I can surmise that Napier is arguing that these statements are party admissions and thus not hearsay under the Federal Rules of Evidence.

A statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). "In considering whether statements are admissible under this rule, [I] must determine if the employee was authorized by his employer regarding the matter about which he allegedly spoke." *Stagman v. Ryan*, 176 F.3d 986, 996 (7th Cir. 1999) (citation omitted).

It is unclear, based on the record before me, who made these alleged statements to Napier, but it seems it was one of two Louis Dreyfus employees: John Etchison or Jeff Bickel. At his deposition, Napier testified that it was the "liquid handler" who told him this but Napier did not remember that man's name. [*See* DE 40-1 at 50:1-51:1.] Louis Dreyfus's corporate representative testified that Jeff Bicklel was the liquid handler the day of the accident, that John Etchison was the truck loader, and that Bickel did not recall the accident. [DE 40-4 (Deposition of K. Anderson) at 16:13-25; *id.* at 20:15-23.] But later in the same deposition, Louis Dreyfus's corporate representative testified that John Etchison was the liquid handler. [*Id.* at 24:13-23.] Another Louis Dreyfus employee, Thelma Ehrick identified Bickel as the liquid handler. [DE 40-2 (Deposition of T. Ehrick) at 20:11-15.] Finally, for what it is worth, in his brief, Napier says it was Etchison who was the liquid handler. [DE 40 at 6.] But the evidence does not definitively show who was the liquid handler and who allegedly made these statements.

Nonetheless, given the testimony from Louis Dreyfus's corporate representative that both Bickel and Etchison were liquid handlers, I think it safe to assume it was one

of these two individuals. And while Napier has not pointed me to any specific job description or deposition testimony of either Bickel or Etchison describing their duties, it seems logical that monitoring whether or not biodeisel had spilled onto the ground is within the scope of a liquid handler's employment. Consequently, this testimony would appear to be a nonhearsay admission by one of Louis Dreyfus's employment which may be used against it as a party to this case. While a plaintiff's testimony that an employee of defendant told him about the spill before it happened is not the most definitive evidence, it is enough to prevent Louis Dreyfus from prevailing on summary judgment, as I must draw all inferences in favor of Napier at this stage. Whether that will be enough to carry the day at trial is yet to be seen.

Of course, this evidence cuts both ways because it also shows that Napier himself was aware of the condition causing his fall when he entered the property. But assessing the comparative knowledge of an invitee and a landowner goes to the question of breach, not of duty. *Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004) ("Whether a landowner has superior knowledge goes to the question of breach, not of duty, and it is one factor among many used to determine if there was a breach."). And that is but another question of fact that must be resolved at trial. *Nagel v. N. Indiana Pub. Serv. Co.*, 26 N.E.3d 30, 47 (Ind. Ct. App. 2015) ("[E]ven if the danger here was obvious, it is a question of fact as to whether NIPSCO could or should have done more to reduce the danger[.]") (reversing grant of summary judgment in premise liability lawsuit). At bottom, it will be up to a jury to decide if there was a breach of the duty and if so,

whether Napier should be assessed with any comparative fault for the damages he has incurred.

### III.     Alleged Spoliation of Evidence

Napier also raises a spoliation argument in support of his opposition to summary judgment. This second aspect of Napier's argument is less persuasive, but because he raises it in his briefing, I will address it. Napier argues that Louis Dreyfus had video footage of the area where he fell but that video longer exists. It appears his argument is that because this video does not exist, I should rule that spoliation has occurred, infer that the video would have shown the existence of biodiesel on the ground at the time of the accident, and that I should use this inference as support in favoring of his argument that Louis Dreyfus had knowledge of the spill.

Before I address this specific issue, however, I must lay out the basics of spoliation under Indiana law. Napier points me to *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) to argue that the "prevailing rule" on spoliation is that bad faith destruction of evidence gives rise to a "strong inference" that the evidence "would have been unfavorable to the party responsible for its destruction." [DE 40 at 7.] *Coates* is a federal civil rights case under Title VII alleging racial discrimination in employment. The case before me is a diversity of citizenship case, so state and not federal law governs the issue of spoliation. *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995); *ArcelorMittal Indiana Harbor LLC v. Amex Nooter, LLC*, 2018 WL 509890, at *1 (N.D. Ind. Jan. 23, 2018) ("duty to preserve pre-suit evidence is governed by Indiana

state law, not federal law"); *Bonilla v. Rexon Indus. Corp.*, 2015 WL 10792026, at *10 (S.D. Ind. Aug. 19, 2015) (applying Indiana law on spoliation in context of summary judgment in diversity case). As such, *Coates* is inapposite.

"Spoliation is not an independent tort in Indiana, but Indiana law does allow courts to fashion remedies for spoliation, including the establishment of a factual inference that the evidence which has been destroyed or altered would, in its original form, be unfavorable to the party responsible." *Bonilla*, 2015 WL 10792026, at *10 (citation omitted); *Gribben v. Wal–Mart Stores, Inc.*, 824 N.E.2d 349, 354 (Ind. 2005). Spoliation has two key elements under Indiana law: (1) the exclusive possession of evidence by a party; and (2) the intentional destruction or suppression of evidence by that party. *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000); *Bonilla*, 2015 WL 10792026, at *10.

Napier has not fully addressed the spoliation issue given his focus on the federal common law standard. While it seems entirely possible that the video surveillance footage would have been in Louis Dreyfus's "exclusive possession," I have no way of knowing that for sure. There has been no evidence of that offered. Indeed, it seems that Louis Dreyfus's surveillance footage may have been maintained by a third party security contractor called Avigilon. [*See* DE 40-3.] And while Napier focuses on Louis Dreyfus's alleged bad faith in failing to following its own internal procedures regarding accident investigation and viewing the video footage as part of the accident investigation, that tells me nothing about whether or not it was intentionally destroyed

or suppressed, as is required under Indiana law. *Cahoon*, 734 N.E.2d at 545; *ArcelorMittal Indiana Harbor*, 2018 WL 509890, at *3 (discussing that while bad faith is an element of spoliation under federal common law as defined by the Seventh Circuit, Indiana has adopted no such requirement).

Given Napier's failure to meet the two fundamental requirements of spoliation under Indiana law, I will not use any alleged spoliation as a basis to deny Louis Dreyfus's motion. Ultimately, and in any event, this is a matter best left to either a motion in limine or for argument at the charge conference prior to submitting the case to the jury. I need not wade any further into the issue now. If Napier wants to move for an adverse inference instruction before or during trial, I will consider the motion at that time.

**Conclusion**

For the foregoing reasons, defendant Louis Dreyfus Company LDAI Holdings, LCC's motion for summary judgment [DE 26] is DENIED.

SO ORDERED on October 15, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT